## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

QAD, INC.,                          )
                                    )
      Petitioner,              )
                                    )
     v.                            )       Civil Action No. 21-mc-370-MN
                                    )
BLOCK & COMPANY, INC.,              )
                                    )
      Respondent.              )

### MEMORANDUM OPINION[1]

Presently before the court in this miscellaneous action to confirm an arbitration award are the following motions: (1) respondent Block & Company, Inc.'s ("Block") motion to vacate the arbitration award (D.I. 4); (2) petitioner QAD, Inc.'s ("QAD") cross-motion for attorney's fees (D.I. 9); and (3) QAD's motion for sanctions pursuant to Federal Rule of Civil Procedure 11 (D.I. 15).[2]  For the following reasons, the arbitration award is CONFIRMED, Block's motion to vacate the arbitration award is DENIED, QAD's motion for attorney's fees is GRANTED, and QAD's motion for Rule 11 sanctions is DENIED as moot.

### I.    BACKGROUND

QAD is a software provider offering an end-to-end business process for handling the receipt, shipping, invoicing, and payment of customer orders.  (D.I. 5, Ex. 1 at 8)  Block is a manufacturer and distributor of cash handling products serving the financial, gaming, hospitality, education, restaurant, retail, and vending industries.  (*Id.*)

---

[1] On December 7, 2021, the parties consented to the jurisdiction of the Magistrate Judge to resolve the pending motions.  (D.I. 21)

[2] The briefing and related filings associated with the pending motions are found at D.I. 5, D.I. 7, D.I. 8, D.I. 12, D.I. 13, D.I. 16, D.I. 17, and D.I. 18.

On October 26, 2018, QAD and Block entered into a contract (the "Cloud Contract") in which QAD agreed to provide its cloud-based Enterprise Resource Planning ("ERP") system to Block in exchange for payment. (D.I. 5, Ex. 2) Specifically, the terms of the Cloud Contract required QAD to provide a hosted environment with the QAD licensed application and infrastructure to support it, consisting of a development, test, and production server. (*Id.*, Ex. 1 at 9) A December 4, 2018 email confirmed that QAD satisfied these obligations by creating the cloud environment and loading it with the cloud applications. (*Id.*, Ex. 1 at 10) The Cloud Contract also included a provision limiting the parties' liability:

> NEITHER PARTY SHALL BE LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES, OR ANY LOSS OF PROFITS OR REVENUE.
> A PARTY'S MAXIMUM LIABILITY FOR ANY DAMAGES ARISING OUT OF OR RELATED TO THE AGREEMENT OR THE SERVICES, WHETHER IN CONTRACT OR TORT OR OTHERWISE, SHALL BE LIMITED TO 1.5X THE AMOUNT OF THE FEES CUSTOMER PAID TO VENDOR OVER THE PREVIOUS TWELVE CALENDAR MONTHS UNDER THE ORDER DOCUMENT GIVING RISE TO THE LIABILITY. THE FOREGOING MAXIMUM LIABILITY LIMIT SHALL NOT APPLY TO (1) DAMAGES ARISING FROM DEATH OR PERSONAL INJURY OR A PARTY'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, OR A BREACH OF OBLIGATIONS UNDER SECTIONS 7 OR 8; OR TO (2) INDEMNITY OBLIGATIONS UNDER SECTIONS 5.2, 10 AND 11 (FOR THE AVOIDANCE OF DOUBT EACH PARTY'S INDEMNITY OBLIGATIONS SHALL COVER ALL CLAIMS MADE BY A THIRD-PARTY, INCLUDING CLAIMS THAT ARE CHARACTERIZED AS CONSEQUENTIAL OR OTHER INDIRECT DAMAGES).

(*Id.*, Ex. 2 at § 12.1)

Soon after entering into the Cloud Contract, Block executed a professional services agreement with Broom Street Software ("Broom Street"), a software consulting and application company, to assist with Cloud implementation. (*Id.*, Ex. 1 at 9) Block's implementation of the Cloud project was subsequently delayed due to the insufficient resources committed to the project. Nonetheless, Block and Broom Street continued to work on the implementation process

between January and July 2019, and QAD continued to provide support services during that time. (*Id.*, Ex. 1 at 10-11)  Block paid its first invoice from QAD in the amount of $42,861.86 on March 29, 2019, but it did not pay any of the subsequent nine invoices QAD sent to Block totaling $744,854.22, despite QAD's efforts to collect on those invoices.  (*Id.*, Ex. 1 at 11)  Block claimed its refusal to pay the invoices was justified by QAD's alleged failure to provide a "Go-Live" cloud environment as required under the terms of the Cloud Contract.  (*Id.*, Ex. 1 at 13)

QAD served a demand for arbitration ("Demand") on Block on July 9, 2020, pursuant to the arbitration provision in the Cloud Contract:

> [A]ny dispute, claim or controversy arising out of or relating to this Agreement or to the breach, termination, enforcement, interpretation or validity thereof, shall be determined by arbitration in Wilmington, Delaware USA before a single arbitrator.  The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures. . . .  The arbitral award may be enforced in any court having jurisdiction thereof.

(D.I. 5, Ex. 2 at § 14.1; *see* Ex. 1 at 4)  Block responded with counterclaims for breach of contract and promissory estoppel against QAD.  (*Id.*, Ex. 1 at 5)  In April 2021, Block indicated it had no intention of paying the outstanding invoices.  (*Id.*, Ex. 1 at 12)  The JAMS arbitrator conducted a virtual arbitration hearing in June 2021 and subsequently entered a final award in favor of QAD on August 10, 2021.  (*Id.*, Ex. 1)  The arbitrator concluded that § 12.1 of the Cloud Contract did not limit QAD's damages and awarded QAD $744,854.22, plus costs and accrued interest at a rate of 1 ½ % per month as of April 4, 2019.  (*Id.*, Ex. 1 at 17-18)

On September 10, 2021, QAD filed a petition to confirm the final arbitration award in this court.[3]  (D.I. 1)  The following week, Block moved to vacate the arbitration award.  (D.I. 5)

---

[3] In the Petition, QAD requested the court award damages as follows: (1) $744,854.22 in contractual damages; (2) accrued interest as of September 10, 2021 in the amount of $172,107.51 with a per diem of $367.32 until final judgment is entered; (3) post-judgment interest at the rate of 1.5% per month from the date of the order through the date the judgment is fully satisfied; (4)

QAD subsequently moved for attorney's fees and Rule 11 sanctions related to Block's motion to vacate the arbitration award.  (D.I. 9; D.I. 15)  The motions are now ripe for resolution.

## II.   DISCUSSION

### A.  Arbitration Award

There is a strong presumption in favor of enforcing arbitration awards under the Federal Arbitration Act ("FAA"), and the party seeking to overturn the award bears the burden of showing that the award does not merit deference.  *Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 241 (3d Cir. 2005); *see also Dunkley v. Mellon Inv'r Servs.*, 378 F. App'x 169, 171 (3d Cir. 2010).  Nonetheless, the court may vacate an arbitration award under the FAA if the arbitrator exceeds his or her authority in reaching a decision.  *See* 9 U.S.C. § 10(a)(4).  The question for the court in applying § 10(a)(4) is whether the arbitrator's award is "irrational," meaning that the award fails to draw its essence from the agreement and cannot be rationally derived from the agreement, or that the record contains no support for the arbitrator's determination.  *Verizon Pa., LLC v. Commc'ns Workers of Am., AFL-CIO, Local 13000*, 13 F.4th 300, 306 (3d Cir. 2021) (quoting *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 295 (3d Cir. 2010); *Exxon Shipping Co. v. Exxon Seamen's Union*, 73 F.3d 1287, 1295 (3d Cir. 1996)).

Block contends that the arbitrator improperly disregarded the Cloud Contract's limited liability provision as unconscionable, despite conceding that the language of the provision is unambiguous.  (D.I. 5 at 6-7)  According to Block, the limited liability provision was drafted by

---

fees and costs relating to the arbitrator and JAMS totaling $41,436; and (5) other fees and costs totaling $16,794.97 plus the costs associated with the Petition itself.  (D.I. 1 at 5)

QAD, and there is no evidence of a gross imbalance between sophisticated parties that fully negotiated the term.  (*Id.* at 8-10)

In response, QAD argues that the applicable case law prohibits a review of the merits of an arbitration award, even if the award allegedly rests on erroneous contract interpretations. (D.I. 8 at 8-9)  Moreover, QAD submits that the arbitrator correctly applied Delaware law in finding the limitation of liability provision unconscionable because Block would otherwise be able to avoid all liability for its breach despite QAD's full performance of its contractual obligations.  (*Id.* at 10-12)

The court finds that Block has not satisfied its heavy burden to show that the arbitrator's award is not rationally derived from the agreement or supported by the record.  *See Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013); *Verizon Pa.*, 13 F.4th at 306.  "[T]he sole question for [the court] is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong."  *Oxford Health Plans*, 569 U.S. at 569.  Here, the arbitrator thoroughly considered and construed the Cloud Contract before reaching his determination.  (D.I. 5, Ex. 1)  Block does not substantively challenge the arbitrator's conclusions that QAD fulfilled its obligations under the terms of the Cloud Contract,[4] or that the limited liability provision at § 12.1 of the Cloud Contract was unambiguous.  (D.I. 5 at 6-11; Ex. 1 at 13-16)

---

[4] In its summary of the factual background in the motion to vacate, Block represents that it "never received a 'Go-Live' Cloud Environment (*i.e.*, a usable product)," and it "did not pay the remaining invoices on the basis that QAD failed to deliver a cloud environment in accordance with its obligations under the Cloud Contract." (D.I. 5 at 3)  QAD's Rule 11 motion is based on these representations, which it argues are inconsistent with the arbitrator's findings. (D.I. 16 at 12-13)  Block does not rely on QAD's alleged failure to satisfy its obligations under the Cloud Contract as a basis for vacating the arbitration award.

The heart of the dispute is whether the arbitrator exceeded his authority under § 10(a)(4) in failing to enforce an unambiguous limited liability provision in the Cloud Contract and declaring it unconscionable. Block cites cases finding that an unambiguous limited liability provision should be enforced. *See, e.g.*, *Galantino v. Baffone*, 46 A.3d 1076, 1081 n.9 (Del. 2012) (stating that unambiguous contract language should be enforced as written); *eCommerce Indus., Inc. v. MWA Intel., Inc.*, 2013 WL 5621678, at *45 (Del. Ch. Sept. 30, 2013) (noting that limited liability clauses are typically enforceable). Block argues unconscionability is difficult to establish when the contracting parties are sophisticated commercial entities. *See, e.g.*, *Ketler v. PFPA, LLC*, 132 A.3d 746, 748 (Del. 2016) ("Unconscionability is a concept that is used sparingly."); *Pig Improvement Co., Inc. v. Middle States Holding Co.*, 943 F. Supp. 392, 402 (D. Del. 1996) (declining to find unambiguous contract provision unconscionable in the commercial setting). But the court "may not review the merits of [an arbitration] award," even in the case of serious legal error. *Verizon Pa.*, 13 F.4th at 306; *see Oxford Health Plans*, 569 U.S. at 569 ("It is not enough . . . to show that the [arbitrator] committed an error—or even a serious error."). Even if the arbitrator erred in his interpretation of the case law on unconscionability, the result would not change because "[e]xceeding one's powers . . . is not synonymous with making a mistake." *Ross Dress for Less Inc. v. VIWP, L.P.*, 750 F. App'x 141, 145 (3d Cir. 2018).

Here, the arbitrator based his assessment of unconscionability on the following facts: (1) Block received the requisite services from QAD under the Cloud Contract; (2) Block unilaterally delayed the completion of the implementation phase; (3) Block repeatedly promised to pay for the services received; and (4) Block cited its failure to pay for services rendered as a basis to avoid liability under § 12.1 of the Cloud Contract. (*Id.* at 13-14, 16) These factual findings were then viewed in the context of Delaware cases assessing limited liability provisions. (*Id.* at 16-17)

6

The arbitrator considered the case authorities submitted by Block, noting many were from jurisdictions other than Delaware. (D.I. 5, Ex. 1 at 16)  The arbitrator was not persuaded by the two Delaware cases Block cited, which involved limitation of liability provisions in software contracts similar to the Cloud Contract in issue. *See eCommerce Indus., Inc. v. MWA Intelligence, Inc.*, 2013 WL 5621678 (Del. Ch. Sept. 30, 2013) (upholding a limitation of liability provision despite the plaintiffs' willful or bad faith breach of the contract); *Tibco Software Inc. v. Mediamath, Inc.*, 2019 WL 3034781 (Del. Super. Ct. July 10, 2019) (declining to enforce a limited liability provision because "no reasonable party would conclude that a failure to pay fees owed under an enforceable contract can be the same basis used to avoid responsibility for the same fees.").  The cases reached different outcomes, and the arbitrator found these unpublished decisions unpersuasive. (D.I. 5, Ex. 1 at 16)

The arbitrator adopted the reasoning of *Hampton v. Warren-Wolfe Assocs., Inc.*, 2004 WL 838847 (Del. Super. Ct. Mar. 25, 2004), which held that a contractual provision exonerating a party from the consequences of its own conduct is disfavored and that questions of unconscionability are reserved for the trier of fact.  Based on his authority as trier of fact, the arbitrator ruled the limited liability provision is unconscionable and could not be used by Block to avoid payment of the invoices.  Even if the arbitrator made a mistake in following the *Hampton* decision,[5] that "mistake" is not enough to vacate the award under § 10(a)(4) of the FAA.  The arbitrator's decision arises from the essence of the contract, i.e., his interpretation of an unambiguous limited liability provision and its unenforceability as unconscionable under

---

[5] Block characterizes the contract in *Hampton* as an adhesion contract that was not negotiated by sophisticated parties. (D.I. 5 at 10)  But the court in *Hampton* emphasized that it had "no information regarding the parties' negotiations involving this contract" because the case was "still in the discovery stages, and the question of unconscionability is one that remain[ed] for the trier of fact to decide."  *Hampton*, 2004 WL 838847, at *3.

Delaware law.  This court cannot relitigate the merits of unconscionability, regardless of whether the arbitrator reached the correct decision.  *See Ario*, 618 F.3d at 295-96 (stating that there must be "absolutely no support at all in the record justifying the arbitrator's determinations for a court to deny enforcement of an award" under the "irrationality" standard of the FAA).  Accordingly, the court "affirm[s] easily the arbitration award under this extremely deferential standard" and denies Block's motion to vacate the arbitration award.  *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003).

### B.  Attorney's Fees

"In suits to compel one party to submit to arbitration or abide by an award, fees are generally awarded if the defaulting party acted without justification, or if the party resisting arbitration did not have a reasonable chance to prevail."  *Chauffeurs, Teamsters & Helpers, Local Union No. 765 v. Stroehmann Bros. Co.*, 625 F.2d 1092, 1094 (3d Cir. 1980) (internal citations and quotation marks omitted).  This policy is intended to discourage "creativity" by a losing party attempting to escape the consequences of its voluntary bargain to submit to arbitration.  *See Mitchell Plastics, Inc. v. Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union*, 946 F. Supp. 401, 408 (W.D. Pa. 1996) ("[T]he party who challenges an arbitration award simply must give closer scrutiny to his decision, leaving as little room as possible for the risk that his creativity will be construed as a repudiation of his own choice that courts properly should discourage.").

The award of attorney's fees is committed to the discretion of this court and may only be reversed on appeal if it is determined to be an abuse of discretion.  *See Wilkes Barre Hosp. Co., LLC v. Wyo. Valley Nurses Ass'n Pasnap*, 453 F. App'x 258, 260 (3d Cir. 2011); *Teamsters Local Union No. 764 v. J.H. Merritt & Co.*, 770 F.2d 40, 43 n.2 (3d Cir. 1985).

QAD contends that Block should be ordered to compensate it for attorney's fees spent responding to Block's motion to vacate the arbitration award because the motion is frivolous. (D.I. 8 at 15)  According to QAD, Block did not have a reasonable chance of prevailing on the motion to vacate, which involves claims of purported factual and legal error by the arbitrator. (*Id.* at 16)  Block responds that attorney's fees are not justified in this instance because it supported its position with authority and continues to believe it has a reasonable chance of success on the merits.  (D.I. 12 at 3-4)

Block did not have a reasonable chance to prevail on its motion to vacate because district courts have extremely limited authority to vacate arbitration awards.  *See Ario*, 618 F.3d at 296 ("[T]he test used to probe the validity of a[n] . . . arbitrator's decision is a singularly undemanding one.").  The terms of the Cloud Contract confirm that Block agreed to resolve disputes between itself and QAD through binding arbitration.  (D.I. 5, Ex. 2 at § 14.1)  For the reasons set forth at § II.A, *supra*, the arbitrator's award was amply supported by the record and by legal authority, and his construction and application of the Cloud Contract's limited liability provision were clearly within the scope of his authority.  Because Block did not have "a reasonable chance to prevail," *Chauffeurs*, 625 F.2d at 1094, QAD's request for attorney's fees is granted.

## C. Rule 11 Sanctions

The relief sought by QAD in its Rule 11 motion for sanctions largely overlaps with the relief sought in QAD's cross-motion for attorney's fees.[6]  (*Compare* D.I. 9 at 2 *with* D.I. 16 at 14)  The court granted QAD's cross-motion for attorney's fees for the reasons set forth at § II.B,

---

[6] For example, pages 8 to 11 of the argument section in QAD's opening brief in support of its Rule 11 motion are copied nearly verbatim from pages 6 to 10 of QAD's brief in response to Block's motion to vacate.  (*Compare* D.I. 16 at 8-11 *with* D.I. 8 at 6-10)

*supra*, and QAD's Rule 11 motion for sanctions does not clearly establish a basis for additional relief beyond that which has already been granted.[7] *See Napier v. Thirty or More Unidentified Fed. Agents, Emps. or Officers*, 855 F.2d 1080, 1094 (3d Cir. 1988) (denying recovery of counsel fees for duplicative efforts).  Consequently, QAD's motion for Rule 11 sanctions is denied as moot.  The court will not permit the recovery of attorney's fees associated with the duplicative Rule 11 motion for sanctions because allowing such a recovery would run counter to the purpose of Rule 11 to "discourage wasteful and abusive tactics."  *Cohen v. Kurtzman*, 45 F. Supp. 2d 423, 435 (D.N.J. 1999).

## III.   CONCLUSION

For the foregoing reasons, the arbitration award is CONFIRMED, Block's motion to vacate the arbitration award (D.I. 4) is DENIED, QAD's cross-motion for attorney's fees (D.I. 9) is GRANTED, and QAD's motion for Rule 11 sanctions (D.I. 15) is DENIED as moot.  On or before **May 2, 2022**, QAD shall submit a proposed form of order that includes all relief requested in the Petition to confirm the arbitration award, plus attorney's fees and costs incurred

---

[7] QAD alleges that Rule 11 sanctions are warranted because Block misrepresented the findings of the arbitrator in its motion to vacate.  (D.I. 16 at 12-13)  But the court finds that Block's brief clearly delineates its own positions from those taken by the arbitrator.  QAD's argument about misrepresentations to the court is further undercut by its own citation errors.  For instance, QAD includes a quote on the standard of "manifest disregard of the law" and attributes it to the Supreme Court's decision in *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008).  (D.I. 13 at 2)  The quote does not appear in *Hall Street*.  Instead, it appears to be from *Fluke v. CashCall, Inc.*, 792 F. Supp. 2d 782, 786 (E.D. Pa. 2011), a district court decision which is not binding on this court.

up to and including the completion of briefing on QAD's cross-motion for attorney's fees.  An Order consistent with this Memorandum Opinion shall issue.

Dated: April 25, 2022

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE